Matter of Mitchell v Wastequip, Inc. (2022 NY Slip Op 01365)





Matter of Mitchell v Wastequip, Inc.


2022 NY Slip Op 01365


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

533132
[*1]In the Matter of the Claim of Frederick Mitchell, Appellant,
v
Wastequip, Inc., et al., Respondents. Workers' Compensation Board, Respondent. (And Another Related Claim.)

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Schotter, Millican, Sinaniyeva & Masilela, LLP, New York City (Geoffrey Schotter of counsel), for appellant.
Walsh and Hacker, Albany (Glenn D. Chase of counsel), for Wastequip, Inc. and another, respondents.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed November 4, 2020, which denied claimant's application to rehear or reopen claimant's workers' compensation claims.
Claimant, a certified welder, sustained work-related injuries in two separate incidents occurring in May 2003 (when a pipe that he was welding exploded) and March 2004 (when he slipped and fell on grease in the employer's bathroom). He applied for workers' compensation benefits and cases were established for various injuries, including to the neck, back, right shoulder, hand, wrist, forearm, thumb and elbow, as well as for reflex sympathetic dystrophy, consequential cardiac condition, consequential depression and consequential blurred vision. In 2007, a Workers' Compensation Law Judge (hereinafter WCLJ) found claimant to be "permanently partially disabled to a marked degree." Claimant thereafter sought to be reclassified as having a permanent total disability and the parties exchanged discovery, including surveillance video footage purportedly taken of claimant between February and March 2010.
In October 2010, a WCLJ found that claimant was permanently totally disabled, but ordered continued testimony as to whether he had made disqualifying false representations about his condition under Workers' Compensation Law § 114-a, finding that "it appears claimant has not been completely candid with his medical providers and . . . has been indulging in medical provider shopping . . . and appears to be a symptom magnifier." The workers' compensation carrier and the employer appealed to the Workers' Compensation Board, which affirmed claimant's reclassification and the continuance.
Hearings before a second WCLJ were held in December 2010 and March 2011 on the Workers' Compensation Law § 114-a issue, during which claimant and investigators testified and surveillance videos of an individual alleged to be claimant were received into evidence. In a June 2011 decision, the second WCLJ — relying on the surveillance videos entered into evidence as compared with the representations that claimant had made about his condition to his medical providers — found that claimant had misrepresented his condition in support of his application to be reclassified as permanently totally disabled. As such, the WCLJ permanently disqualified claimant from receiving benefits from June 13, 2011 forward.
Claimant appealed to the Board, challenging the WCLJ's findings with respect to the surveillance footage and alleging that the videos contained flaws that affected the WCLJ's decision. In January 2012, the Board rejected claimant's arguments as it related to the surveillance videos and affirmed the second WCLJ's findings and the penalty imposed. Claimant applied for full Board review, which was denied in July 2012. A Board panel thereafter reversed its previous affirmance of claimant's reclassification to a permanent total disability and remanded the matter to a WCLJ to issue a new decision [*2]on the issue. The WCLJ, in a reserved decision, found the issue of claimant's degree of disability to be moot in light of the Board's decision that he was permanently disqualified from receiving benefits due to his misrepresentations, but nevertheless found that claimant was permanently partially disabled.
In March 2020, claimant applied to the Board for a rehearing or reopening of his claims with respect to his permanent disqualification, grounding his application in newly discovered evidence and as being in the interest of justice. By decision dated November 2020, the Board panel denied claimant's application, emphasizing that the issues "ha[d] been fully resolved for over [seven] years," claimant failed to proffer newly discovered evidence supported by affidavits, his submissions relied upon newly "created" evidence and not newly "discovered" evidence, and he had given no reason "as to why such [newly created] evidence could not have been presented at the time these issues were originally litigated." Claimant appeals.
As an initial matter, because "claimant did not appeal from the Board's [2012] decision regarding his violation of Workers' Compensation Law § 114-a, and the time to do so has long since passed, any arguments raised with regard to that decision and the penalty imposed are not properly before [this Court]" (Matter of Brennan v Village of Johnson City, 98 AD3d 1199, 1199 [2012], lv dismissed 20 NY3d 998 [2013]). The only issue before us is whether the Board abused its discretion in denying claimant's request to reopen the claims or for a rehearing of the matter. We find that the Board acted within its discretion.
The Board retains jurisdiction to grant an application for rehearing or reopening made by any party in interest. "Such application must indicate that: (1) certain material evidence not available for presentation before the [B]oard at the time of hearing is now available; or (2) proof of a change in condition material to the issue is involved; or (3) it would be in the interest of justice" (12 NYCRR 300.14 [a]; see Matter of White v Herman, 56 AD3d 872, 873 [2008]; see also Workers' Compensation Law § 123). Although "there is no statutorily-prescribed time period in which a[n applicant] may seek rehearing or reopening of a claim" (Matter of Villagra v Sunrise Senior Living Mgt., 168 AD3d 1199, 1201 [2019]), the "application must be made within a reasonable time after the applicant has had knowledge of the facts constituting the grounds upon which such application is made" (12 NYCRR 300.14 [b]; see Matter of Chen v Five Star Travel of NY Inc., 150 AD3d 1505, 1506 [2017]; Matter of Gillard v Consolidated Edison of N.Y., Inc., 115 AD3d 1121, 1122 [2014]).
An application based upon allegations of newly discovered evidence must be "substantiated by supporting affidavits" (12 NYCRR 300.14 [b]). No analogous requirement exists for interest of justice applications (see 12 NYCRR 300.14 [b]). This Court's review of [*3]the Board's decision to rehear or reopen a claim is limited to whether there was an abuse of discretion (see Matter of Mejia v Drake Group, LLC, 123 AD3d 1361, 1362 [2014]; Matter of Ewing v YMCA, 57 AD3d 1080, 1081 [2008]).
To the extent that claimant based his motion upon newly discovered evidence, the Board correctly denied his application. In support of his motion, claimant submitted, among other things, two investigation reports — dated December 2014 and February 2014 — from the firm Vincent Parco P.I., Inc., as well as a 2019 letter from Wilber Cabral. Although the letter and reports purport to identify certain issues with the surveillance footage relied upon by the Board, they do not present any newly discovered evidence and, as the Board noted, claimant has proffered no reason why such submissions could not have been presented when the Workers' Compensation Law § 114-a issue was originally litigated (see Matter of Chen v Five Star Travel of NY Inc., 150 AD3d at 1506). In any event, these submissions do not contain certifications attesting to their truthfulness so as to be considered affidavits (see General Construction Law § 36; 2 Carmody-Wait 2d § 4:11 ["An affidavit is a statement of facts in writing, signed and sworn to before an authorized officer"]). Claimant also submitted a December 2018 "Audio/Video Authentication Report" prepared by Doug Carner — an audio-video enhancement and authentication forensic expert — which suffers from the same deficiencies. The report does not contain any newly discovered evidence and, although it includes a statement that Carner's representations were being made under penalty of perjury, such representation lacks a certification by a notary or similar officer authorized to administer oaths (see 2 Carmody-Wait 2d § 4:11; see generally CPLR 2309, 3021). As such, the Board's denial of claimant's reopening application, to the extent it alleged newly discovered evidence, was not an abuse of discretion (see 12 NYCRR 300.14 [a], [b]).
As for claimant's request to reopen the claims in the interest of justice, he argued, among other things, that there was an insufficient foundation to admit the surveillance videos into evidence. However, the WCLJ was not "bound by common law or statutory rules of evidence or by technical or formal rules of procedure" (Workers' Compensation Law § 118; see 12 NYCRR 300.9 [b]; Matter of Manka v Goodyear Tire & Rubber Co., 123 AD3d 1172, 1173 [2014], lv denied 25 NY3d 909 [2015]) and, notably, claimant's counsel "agreed" to the authentication of the March 5, 2010 and March 12, 2010 surveillance videos during the hearing before the second WCLJ. Moreover, nothing in claimant's submissions indicates that the videos' copying, rerecording or editing called the entirety of their content into serious doubt,[FN1] and claimant has proffered no compelling reason why he waited over seven years to make his application (see 12 NYCRR 300.14 [b]). After reviewing the videos and the submissions [*4]proffered in support of claimant's application, we find no abuse of discretion in the Board's determination to deny reopening of the claims or a rehearing of the matter in the interest of justice.
Egan Jr., J.P., Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: During oral argument, the employer conceded that one of the videos depicted inverse images that appeared to show claimant walking with a cane in his right hand — which would be inconsistent with his statements to treatment providers that use of his right hand was significantly impaired — when, in reality, it was in his left hand. However, claimant raised this issue in his initial appeal to the Board and the January 2012 Board decision did not rely solely on the fact that the surveillance videos showed claimant walking with the cane in his right hand in support of its determination that he was disqualified from receiving benefits. Rather, the Board relied on several different portions of the videos, including, among other things, the fact that they showed him "walking with the cane, but not relying on the cane to assist in ambulation[, and] not walking slowly or unsteadily," in contradiction to the testimony of some of claimant's treating physicians. The Board also noted that "[t]he video surveillance also does not show . . . claimant being fearful [of crowds] or unable to function in any way," in contradiction to the testimony of his primary care physician.